

**CT Corporation**
**Service of Process Notification**
07/14/2025
CT Log Number 549594420

## Service of Process Transmittal Summary

**TO:** Jan White
Huntington Ingalls Industries, Inc.
5220 RIVER ROAD
AVONDALE, LA 70094-2770

**RE:** **Process Served in Louisiana**

**FOR:** Huntington Ingalls Incorporated  (Domestic State: VA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: GARY P. GABRIEL // To: Huntington Ingalls Incorporated |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Attachment(s) |
| **COURT/AGENCY:** | ORLEANS; ORLEANS CIVIL DISTRICT COURT, LA<br>Case # 202502831 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **PROCESS SERVED ON:** | C T Corporation System, Baton Rouge, LA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/14/2025 at 09:38 |
| **JURISDICTION SERVED:** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service |
| **ATTORNEY(S)/SENDER(S):** | Stephen J. Austin<br>Stephen J. Austin, LLC<br>1 Galleria Blvd Suite 1900<br>Metairie, LA 70001<br>504-377-5200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/14/2025, Expected Purge Date: 07/19/2025<br><br>Image SOP<br><br>Email Notification,  Jan White  jan.white@hii-co.com<br><br>Email Notification,  Shayna Callis  shayna.e.callis@hii-co.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the

# Exhibit A



**CT Corporation**
**Service of Process Notification**
07/14/2025
CT Log Number 549594420

included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:** Mon, Jul 14, 2025
**Server Name:** Drop Service

| Entity Served | HUNTINGTON INGALLS INCORPORATED |
|---|---|
| Case Number | 2025-02831 |
| Jurisdiction | LA |

| Inserts | | |
|---|---|---|
| | | |



ATTORNEY'S NAME: Austin, Stephen J 34236
AND ADDRESS: 1 Galleria Blvd Suite 1900, Metairie, LA 70001

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO: 2025-02831   DIVISION: A   SECTION: 16

**GABRIEL, GARY P**

Versus

**HUNTINGTON INGALLS INCORPORATED ET AL**

### CITATION

TO:  HUNTINGTON INGALLS INCORPORATED
THROUGH: ITS REGISTERED AGENT CT CORPORATION SYSTEM
3867 PLAZA TOWER DRIVE, BATON ROUGE, LA 70816

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the
PETITION FOR DAMAGES
a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA 70112.

### ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA June 23, 2025**

Clerk's Office, Room 402         CHELSEY RICHARD NAPOLEON, Clerk of
Civil Courts Building            The Civil District Court
421 Loyola Avenue                for the Parish of Orleans
New Orleans, LA 70112            State of LA
                                 by _____
                                 Deonca Julian, Deputy Clerk

### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ served a copy of the within **PETITION FOR DAMAGES** ON HUNTINGTON INGALLS INCORPORATED THROUGH: ITS REGISTERED AGENT CT CORPORATION SYSTEM Returned the same day No. _____ Deputy Sheriff of _____ Mileage: $ _____ / ENTERED / _____ PAPER    RETURN _____ / _____ / _____ SERIAL NO.  DEPUTY  PARISH | On this _____ day of _____ served a copy of the within **PETITION FOR DAMAGES** ON HUNTINGTON INGALLS INCORPORATED THROUGH: ITS REGISTERED AGENT CT CORPORATION SYSTEM by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said HUNTINGTON INGALLS INCORPORATED being absent from the domicile at time of said service. Returned the same day _____ No. _____ Deputy Sheriff of _____ |

ID: 11642852                Page 1 of 2

Civil Code of Procedures
Article 1001

Art. 1001. Delay for answering

    A. A defendant shall file his answer within twenty-one days after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a discovery request with his petition, the defendant shall file his answer to the petition within thirty days after service of citation and service of discovery request.

    B. When an exception is filed prior to answer and is overruled or referred to the merits, or is sustained and an amendment of the petition ordered, the answer shall be filed within fifteen days after the exception is overruled or referred to the merits, or fifteen days after service of the amended petition.

    C. The court may grant additional time for answering.

    Acts 2021, No. 174, §1, eff. Jan. 1, 2022.

2025-02831



Section 16

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. _____  DIVISION _____  SECTION _____

GARY P. GABRIEL

VERSUS

HUNTINGTON INGALLS INCORPORATED; TAYLOR-SEIDENBACH, INC.; UNIROYAL HOLDING, INC.; and UNION CARBIDE CORPORATION

FILED _____  _____
                                                      DEPUTY CLERK

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes the plaintiff, GARY P. GABRIEL, who files his Petition for Damages as follows:

THE PARTIES

1.

The plaintiff is:

A.  GARY P. GABRIEL, a person of full age and majority who is a resident citizen of Orleans Parish, Louisiana. On July 5, 2024, the plaintiff was diagnosed with lung cancer, which was caused by exposure to asbestos, a toxic mineral fiber, from the acts and omissions of the defendants as further stated herein.

2.

The defendants are:

A.  HUNTINGTON INGALLS INCORPORATED, formerly known as Northrop Grumman Shipbuilding, Inc., formerly known as Northrop Grumman Ship Systems, Inc., formerly known as Avondale Industries, Inc., formerly known as Avondale Shipyards, Inc., formerly known as Avondale Marine Ways, Inc., and referred to as "Avondale Shipyards," is a corporation organized under the laws of Delaware with its principal place of business in Virginia. This defendant can be served through its registered agent, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

VERIFIED
Kasie Jiles
2025 MAR 24  P 01:05

E-Filed

Case 2:25-cv-01666-SSV-MBN   Document 1-1   Filed 08/13/25   Page 7 of 16
2025-02831



Section 16

FILED
2025 MAR 24 A 10:29
CIVIL
DISTRICT COURT

B.  TRAVELERS INSURANCE COMPANY, a foreign insurer. This defendant is sued under the Louisiana Direct Action Statute as the insurer of Avondale Shipyards' executive officers named below, all of whom were resident citizens of Louisiana at all material times. This defendant can be served through the Louisiana Secretary of State, Legal Services Section, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

C.  TAYLOR-SEIDENBACH, INC., a corporation organized under the laws of Louisiana with its principal place of business in Louisiana. This defendant is sued as a Supplier Defendant. This defendant can be served through its registered agent, Hal Shepard, 731 South Scott Street, New Orleans, Louisiana 70119.

D.  UNIROYAL HOLDING, INC., a foreign corporation. This defendant is a Product Liability Defendant responsible for its asbestos-containing cloth. This defendant can be served at its principal place of business, 70 Great Hill Road, Naugatuck, Connecticut 06770.

E.  UNION CARBIDE CORPORATION, a corporation organized under the laws of New York with its principal place of business in Texas. This defendant is sued as a Manufacturing Defendant for its raw asbestos product, known as Calidria. This defendant can be served through its registered agent, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

VENUE

3.

The defendant Taylor-Seidenbach, Inc., is a domestic corporation with its registered office in Orleans Parish. Further, one or more of the executive officers of Avondale Shipyards was a resident of Orleans Parish at the time of their death. The plaintiff alleges that the defendants are solidarily liable. Therefore, venue is proper in Orleans Parish under Articles 42 and 73 of the Louisiana Code of Civil Procedure.

FACTUAL ALLEGATIONS

4.

During the years 1970 and 1975-1977, the plaintiff was employed as a laborer, welder, and shipfitter at Avondale Shipyards' Main Yard in Avondale, Jefferson Parish, Louisiana. He was frequently exposed to high levels of asbestos during his employment and at his job sites.

Page 2 of 11

E-Filed

Case 2:25-cv-01666-SSV-MBN    Document 1-1    Filed 08/13/25    Page 8 of 16
2025-02831



Section 16

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

This exposure occurred through the plaintiff's use of asbestos-containing products during his employment; through the use by co-employees of asbestos-containing products in close proximity to him; through asbestos-containing products on the premises where he worked; through asbestos-containing products under the care, custody, and control of other persons and companies; and through other companies' employees' use of asbestos-containing products in close proximity to him. These asbestos-containing products included, but are not limited to, raw asbestos; pipe and block insulation; board and panel insulation; pipe covering; spray insulation and fireproofing; refractory; adhesive; sealant; mastic; gaskets; cloth; Lincoln welding rods, wire and wire insulation; and other asbestos-containing products. As a result of these exposures, the plaintiff was diagnosed with lung cancer on July 5, 2024.

### ADDITIONAL ALLEGATIONS AGAINST AVONDALE SHIPYARDS

5.

The plaintiff asserts strict liability and negligence claims against Avondale Shipyards. The plaintiff was employed by Avondale Shipyards in 1970 and 1975-1977, and during that time, he was exposed to asbestos. As his employer, Avondale Shipyards was responsible for the plaintiff's safety, and for the reasons further stated herein, Avondale Shipyards breached that duty when Avondale Shipyards allowed the plaintiff to be exposed to asbestos, a toxic mineral fiber. Further, the plaintiff was lawfully on the premises owned by Avondale Shipyards. The premises and their appurtenances owned by Avondale Shipyards were defective, and the presence and use of asbestos on those premises and appurtenances presented an unreasonable risk of harm to the plaintiff. The plaintiff was exposed to asbestos from these products. Further, at all material times, Avondale Shipyards had care, custody, and control (*garde*) of the asbestos-containing products on its premises and used therein. These products were defective and created an unreasonable risk of harm to people such as the plaintiff, and he was exposed to asbestos from these products.

Case 2:25-cv-01666-SSV-MBN Document 1-1 Filed 08/13/25 Page 9 of 16
2025-02831


Section 16

FILED
2025 MAR 24 A 10:29
CIVIL
DISTRICT COURT

ADDITIONAL ALLEGATIONS AGAINST AVONDALE SHIPYARDS' EXECUTIVE OFFICERS

6.

From the beginning of plaintiff's employment at Avondale Shipyards, and until October 1, 1976, the following were executive officers of the plaintiff's employer:

A. C. Edwin Hartzman, president,

B. Ollie H. Gatlin, vice president of plant engineering,

C. Heddie Dawes Eves, executive vice president of administration,

D. Sam Stone, executive vice president of engineering,

E. Edward A. Blanchard, vice president of production,

F. Ewing Moore, personnel director (the director of safety reported to him),

G. John McQue, personnel director (replaced Ewing Moore),

H. John Chantrey, director of safety,

I. George Kelmell, safety inspector,

J. Peter R. Territo, safety inspector,

K. John David ("J. D.") Roberts, safety engineer,

L. Earl Spooner, subordinate to Ollie H. Gatlin, executive vice president of plant engineering, and

M. Burnett L. ("Frenchy") Bordelon, Sr., superintendent or supervisor of insulation and stud welding.

7.

The executive officers named previously had a personal duty to ensure the safety of the company's employees, like the plaintiff, but they breached that duty by allowing the plaintiff to be exposed to asbestos, a toxic mineral fiber, which they knew or should have known would likely cause harm. In the alternative, the executive officers named previously attempted to delegate their responsibility of safety to the safety directors and safety inspectors named previously, but the executive officers personally knew or should have known that the safety directors and safety inspectors inadequately performed or failed to perform their safety duties and failed to cure the risk of harm presented by asbestos. Further, at all material times, the

Case 2:25-cv-01666-SSV-MBN   Document 1-1   Filed 08/13/25   Page 10 of 16

2025-02831

A

Section 16

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

executive officers had care, custody, and control (*garde*) of the asbestos-containing products on their premises and used therein. These products were defective and created an unreasonable risk of harm to people such as the plaintiff, and he was exposed to asbestos from these products. The plaintiff asserts a claim against these executive officers' insurer(s) pursuant to the Louisiana Direct Action Statute, codified at Louisiana Revised Statutes 22:1269. Upon information and belief, all these executive officers are deceased, insolvent, and/or bankrupt. Those insurer(s) is/are:

    A.    TRAVELERS INSURANCE COMPANY.

This insurance provides coverage for the claims made by the plaintiff in this case. The plaintiff hereby makes a claim against the full proceeds of these policies.

## ADDITIONAL ALLEGATIONS AGAINST THE SUPPLIER DEFENDANT

8.

The Supplier Defendant, TAYLOR-SEIDENBACH, INC., supplied asbestos-containing products to Avondale Shipyards at the times and places stated herein. These asbestos-containing products included, but are not limited to, pipe and block insulation; board and panel insulation; pipe covering; spray insulation, refractory, and cement; mastics; gaskets; cloths; and other asbestos-containing products.

9.

The plaintiff asserts a claim against the Supplier Defendant for negligence. As a result of the foreseeable use of those products, the plaintiff was exposed to asbestos. The Supplier Defendant is obligated to the plaintiff because their defective products exposed the plaintiff to asbestos. The Supplier Defendant was in the business of processing, mining, making, designing, manufacturing, producing, compounding, marketing, selling, supplying, distributing, installing, removing, and/or placing in the stream of commerce asbestos-containing products, and these defendants did in fact process, mine, make, design, manufacture, produce, compound, market, sell, supply, distribute, install, remove, and/or place in the stream of commerce asbestos-containing products. There was no substantial change to those asbestos-containing products from the time they left the possession of these defendants until they reached the plaintiff. There was a safer and practical alternative design that these defendants could have used at the time the


asbestos-containing products were processed, mined, made, designed, manufactured, produced, compounded, marketed, sold, supplied, distributed, installed, removed, and/or placed in the stream of commerce. The plaintiff was exposed to asbestos from these products and was damaged as stated herein.

10.

Likewise, the Supplier Defendant is obligated to the plaintiff for failing to warn him of the dangers of asbestos in its defective products. This defendant's asbestos-containing products were dangerous when used as intended because they exposed the plaintiff to asbestos. The defendant knew or should have known that their asbestos-containing products could create danger when used as intended in their customary manner. The defendant did not give an adequate warning about the danger to people likely to be injured by the product, such as the plaintiff. The plaintiff was exposed to asbestos from these products and was damaged as stated herein.

11.

The Supplier Defendant is also strictly liable to the plaintiff because they are professional vendors of asbestos-containing products. The Supplier Defendant engaged in practices whereby they were capable of controlling, and did in fact control, the quality of the asbestos products. The size, volume, and merchandizing practices of the Supplier Defendant brings it within the class of professional vendors who are presumed to know of the defects in their products. The plaintiff was exposed to asbestos from these products and was damaged as stated herein.

ADDITIONAL ALLEGATIONS AGAINST ALL DEFENDANTS

12.

At the times and places named herein, all the defendants harmed the plaintiff through their acts and omissions when they:

    A.    Failed to warn the plaintiff of the inherent dangers in the use of asbestos,

    B.    Failed to provide necessary protection to the plaintiff,

    C.    Failed to provide clean, respirable air and proper ventilation to the plaintiff,

    D.    Failed to provide showers and protective clothing to the plaintiff,

Case 3:25-cv-01666-SSV-MBN   Document 1-1   Filed 08/13/25   Page 12 of 16

2025-02831

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

A
Section 16

E. Disregarded safety in the storage, handling, and transportation of asbestos-containing products,

F. Failed to educate the plaintiff as to what asbestos was, what substances contained asbestos, and how to avoid exposure to those substances,

G. Failed to segregate work areas so that the plaintiff would not be exposed to asbestos,

H. Failed to provide necessary and adequate respiratory protections,

I. Failed to inform the plaintiff that he was being exposed to asbestos,

J. Failed to monitor for the presence of asbestos,

K. Failed to inform the plaintiff that asbestos exposure could cause lung cancer,

L. Failed to remove asbestos from their property and from their work,

M. Failed to prevent asbestos from being used in their work and by their employees,

N. Failed to utilize non-asbestos products, and

O. Failed to develop adequate safety procedures for the handling and removal of asbestos.

13.

The defendants knew that injury to the plaintiff was substantially certain to follow. These acts and omissions were done negligently and/or wantonly. As a proximate result of the defendants' acts and omissions, the plaintiff was caused to suffer injury, including but not limited to lung cancer, physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life. He will continue to suffer these damages in the future.

14.

The defendants are obligated in solido to the plaintiff for their acts and omissions that caused the plaintiff's lung cancer. The defendants' acts and omissions caused the plaintiff to be exposed to asbestos fibers in the air, which the plaintiff breathed. Once inside the plaintiff's body and after a long latency period, the toxic effect of the asbestos fibers manifested as lung cancer. The plaintiff did not know, and could not have known, that the defendants injured him until he

Case 2:25-cv-01666-SSV-MBN    Document 1-1    Filed 08/13/25    Page 13 of 16

2025-02831

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT



was told that his lung cancer was the result of asbestos exposure. He timely files this civil action within one year of his diagnosis of lung cancer.

15.

All defendants were aware, or should have been aware, of the dangers of asbestos prior to the times when the plaintiff was exposed. In 1928, F. W. Simson, M.D., published a landmark study in the *British Medical Journal* regarding asbestosis in South African asbestos mine workers. In 1930, E. R. A. Merewether, M.D., authored the "Report on Effects of Asbestos Dust on the Lungs and Dust Suppression in the Asbestos Industry," which was published by the United Kingdom's government printing office. This now-historic report thoroughly and publicly documented the health hazards caused by exposure to asbestos.

16.

In 1936, the United States Congress passed the Walsh-Healey Public Contracts Act, which covered certain contracts in excess of $10,000 with the United States government for the manufacture or furnishing of materials, supplies, articles, or equipment. The Walsh-Healey Act required, among other things, that working conditions met certain standards where the government contracts were performed. For instance, the Act prohibited working conditions that were "unsanitary, hazardous, or dangerous to the health and safety of employees engaged in the performance of the contract."

17.

In 1938, the United States Treasury Department publicly issued a 126-page health bulletin that summarized the health risks posed to workers in the asbestos textile industry. At the very beginning of the publication, the report noted that when asbestos is inhaled daily, year in and year out, a lung disease termed "asbestosis" may develop.

18.

Beginning in the late 1940s and continuing into the 1950s, the American Conference of Government Industrial Hygienists published numerous papers containing maximum air concentrations for dust, including asbestos dust. In 1956, the ACGIH published the first requirements for "threshold limit values," the levels at which workers can be exposed to

Case 2:25-cv-01666-SSV-MBN   Document 1-1   Filed 08/13/25   Page 14 of 16

2025-02831

A
Section 16

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

contaminants on a daily basis, over a working career, without experiencing adverse health effects. These publications included asbestos as a potential toxic dust.

19.

By no later than the 1940s and early 1950s, the dangers of high exposures to asbestos, even in short duration, were well-documented and well-accepted. By 1952, the Louisiana Legislature had added asbestosis to the list of compensable occupational diseases under the Louisiana Worker's Compensation Act, codified in Louisiana Revised Statutes 23:1031.1(A) (1952).

20.

The causal connection between asbestos and lung cancer was well-documented by the 1950s at the very latest. In 1955, Richard Doll, M.D., published a landmark study in the *British Journal of Industrial Medicine* that established a causal link between asbestos exposure and lung cancer to the satisfaction of even skeptical medical scientists and further noted the long latency period of the asbestos-related disease. His studies laid the foundation for further studies that explored the connection between asbestos exposure and mesothelioma, including the monumental studies by the American medical researcher Irving J. Selikoff, M.D., published in 1964 and 1965.

21.

On March 31, 1971, the United States Environmental Protection Agency listed asbestos as a hazardous air pollutant. On December 7, 1971, the Occupational Safety and Health Administration promulgated an emergency standard for asbestos dust of five fibers per cubic centimeter. On June 7, 1972, the Occupational Safety and Health Administration issued its *Standard for Exposure to Asbestos Dust*, which noted: "No one has disputed that exposure to asbestos of high enough intensity and long enough duration is causally related to asbestosis and cancer." The *Standard for Exposure to Asbestos Dust* required enclosures, local exhaust ventilation, and vacuum sweeping if workers encountered levels of asbestos above this limit. In July 1976, this exposure limit was lowered to two fibers per cubic centimeter. The plaintiff was exposed to asbestos exceeding these limits.

2025-02831


A
Section 16

FILED
2025 MAR 24 A 10:29
CIVIL
DISTRICT COURT

## DAMAGES

22.

As a result of the acts and omissions of the defendants, the plaintiff is entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

A.  Past, present, and future physical pain and suffering;

B.  Past, present, and future mental anguish and emotional distress;

C.  Disfigurement and embarrassment,

D.  Physical impairment,

E.  Physical and mental disabilities,

F.  Past, present, and future medical care, convalescence, mental and physical therapy, and all other health care expenses,

G.  Loss of enjoyment of life,

H.  Fear of further disease processes and death; and

I.  Interest and costs.

WHEREFORE, PREMISES CONSIDERED, the plaintiff, GARY P. GABRIEL, prays that the defendants named herein, HUNTINGTON INGALLS INCORPORATED; TRAVELERS INSURANCE COMPANY; UNIROYAL HOLDING, INC.; TAYLOR-SEIDENBACH, INC.; and UNION CARBIDE CORPORATION, be duly cited to appear and answer this petition and that after due proceedings are had there be judgment rendered herein in the plaintiff's favor and against the defendants, jointly, severally, and in solido, for an amount reasonable under the premises, for all costs of the proceedings, and for all general and equitable relief to which he is entitled.

Respectfully submitted,

/s/ Stephen J. Austin

Stephen J. Austin (La. Bar No. 34236)
STEPHEN J. AUSTIN, LLC
1 Galleria Boulevard, Suite 1900
Metairie, Louisiana 70001
Telephone (504) 377-5200
Facsimile (504) 324-0152
Email stephen@stephenjaustin.com
ATTORNEY FOR THE PLAINTIFF

A TRUE COPY

*Deputy Clerk signature*
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA


Section 16

FILED
2025 MAR 24  A 10:29
CIVIL
DISTRICT COURT

PLEASE SERVE:

HUNTINGTON INGALLS INCORPORATED
Through its registered agent
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816

TRAVELERS INSURANCE COMPANY
Through the Louisiana Secretary of State
Legal Services Section
8585 Archives Avenue
Baton Rouge, Louisiana 70809

TAYLOR-SEIDENBACH, INC.
Through its agent for service
Hal Shepard
731 South Scott Street
New Orleans, Louisiana 70119

UNIROYAL HOLDING, INC.                              LONG ARM SERVICE
At its principal place of business
70 Great Hill Road
Naugatuck, Connecticut 06770

UNION CARBIDE CORPORATION
Through its registered agent
CT Corporation System
3867 Plaza Tower Drive
Baton Rouge, Louisiana 70816

# # #